UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROBERT STEWART HARRIS,

            Petitioner,

vs.                                Case No. 3:10-cv-550-J-37TEM

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

            Respondents.

**ORDER**

**A. Status**

Petitioner Robert Stewart Harris, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) with exhibits under 28 U.S.C. § 2254 on June 21, 2010, pursuant to the mailbox rule.[1]  He challenges a 2000 state court (Columbia County, Florida) judgment of conviction for conspiracy to commit first degree murder and first degree murder.  He was sentenced to

---

[1] The Petition (Doc. #1) was filed with the Clerk on June 23, 2010; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (June 21, 2010).  See Houston v. Lack, 487 U.S. 266, 275-76 (1988).  The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

death on June 23, 2000; however, the death sentence was reversed on appeal, and Petitioner was sentenced to life in prison without the possibility of parole on September 17, 2003.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other

> collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). <u>See</u> Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. #21) (Response). In support of their contentions, they have submitted exhibits.[2] <u>See</u> Exhibits (Doc. #22). Petitioner was given admonitions and a time frame to respond to the request to dismiss the Petition contained within the Response. <u>See</u> Court's Order (Doc. #9). Petitioner filed an Amended Reply (Doc. #27) (hereinafter Reply).

### B. One-Year Limitations Period

The following procedural history is relevant to the one-year limitations issue. After a jury trial, Petitioner was convicted of conspiracy to commit murder in the first degree and murder in the first degree. Ex. 5. The jury provided an advisory sentence, by a vote of 7 to 5, that the court impose the death penalty. Ex. 9. Petitioner was sentenced to thirty years on Count I (the conspiracy count) and to death on Count II (the murder count). Ex. 13. The judgment and sentence was entered on June 23, 2000. Ex. 14. Petitioner appealed. Ex. 16; Ex. 17; Ex. 18. The Supreme Court of

---

[2] The Court will hereinafter refer to Respondents' exhibits as "Ex."

Florida, in its opinion of March 27, 2003, affirmed the conviction but vacated the death sentence and remanded the case to the trial court for a new penalty phase proceeding. Ex. 19; Harris v. State, 843 So.2d 856 (Fla. 2003) (per curiam).

A Stipulation as to Resentencing on Count II of the Indictment was filed on August 22, 2003, stipulating to a sentence of life imprisonment as to Count II, signed by Petitioner, the Assistant Public Defender, and the Assistant State Attorney. Ex. 20. The court, in its order of September 17, 2003, sentenced Petitioner to life without the possibility of parole on Count II, to be served concurrently with the sentence under Count I. Id. Petitioner did not seek an appeal. Therefore, his conviction became final on Friday, October 17, 2003, when the time to appeal expired. Response at 11.

The one-year period of limitations started running on October 18, 2003, the day after Petitioner's conviction became final, and expired on Monday, October 18, 2004, utilizing the anniversary method. Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008). Petitioner did not have any applications for post conviction relief pending in the state court system through the expiration of the one-year AEDPA limitations period.

Indeed, Petitioner did not file a request for documents to prepare his post conviction motion until March 16, 2005, Ex. 21, and he did not file his post conviction motions until May 26, 2005,

pursuant to the mailbox rule. Ex. 22A; Ex. 23A. These motions did not toll the federal one-year limitations period because it had already expired on October 18, 2004. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam), cert. denied, 531 U.S. 991 (2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Although Petitioner, on May 26, 2005, filed a request for a belated appeal, Ex. 22A; Ex. 22B, he withdrew his request, Ex. 22E, and the matter was dismissed by the First District Court of Appeal. on August 17, 2005. Id. See Jimenez v. Quarterman, 555 U.S. 113, 120 n.4 (2009) (finding where a state court reopens direct review, the conviction is rendered non-final for purposes of 28 U.S.C. § 2244(d)(1)(A)). It was not reopened for direct review; thus, the federal Petition was not timely filed.

Based on the foregoing, the Petition, filed June 21, 2010, is untimely filed and due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted. Petitioner asserts that he is entitled to equitable tolling for the periods of time in which he was mentally incapacitated. Reply at 2-8.

Petitioner, in his Reply at 3, asserts that "his mental incompetence **in fact** caused him to fail to meet the AEDPA filing deadline."[3] The question before the Court is whether Petitioner has demonstrated that he was mentally incompetent to file a federal habeas corpus petition in a timely manner during the pertinent time period. Upon review, the pertinent time period is that period from October 18, 2003, the day after his conviction became final, through October 18, 2004, when the one-year period expired.

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs, 520 F.3d at 1318 (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted). The burden

---

[3] In deciding whether the statute of limitations bars this action, the Court should consider whether Petitioner Harris has claimed and demonstrated that a state impediment prevented him from timely filing or that equitable tolling "excepts the one-year filing deadline." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007). Here, Petitioner has claimed that he is entitled to equitable tolling due to mental incompetence.

is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted. Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (per curiam) (citations omitted). Here, Petitioner simply has not met the burden of showing that equitable tolling is warranted.

The Eleventh Circuit has held that an allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling. Lawrence v. Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007); see Fox v. McNeil, 373 Fed.Appx. 32, 34 (11th Cir. 2010) (per curiam) (not selected for publication in the Federal Reporter) (finding petitioner had not met his burden to prove that equitable tolling was appropriate where he had "failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"), cert. denied, 131 S.Ct. 1047 (2011); United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (finding the pro se defendant's alleged mental disorders did not justify equitable tolling of the one-year limitations period, absent a showing that his condition resulted in "profound mental incapacity").

The documents reflect the following relevant facts. In January, 1999, Petitioner was granted a 30 per cent evaluation for anxiety with depression effective July 1, 1995. Ex. 3. A Medical Evaluation Board Summary, from October 11, 1994, provided a final diagnosis of anxiety disorder, NOS, noting the physical symptoms were fairly consistent with generalized anxiety disorder. Id. The staff psychiatrist wondered about the possibility of post traumatic stress disorder, but recognized that Petitioner did not have the normal symptoms of that diagnosis. Id. He included depression, NOS, psychological factors affecting physical condition, including irritable bowel syndrome, chronic headache, chronic lower back pain, and history of gastroesophageal reflux. Id. The disposition and recommendations is as follows:

> Psychiatric profile is changed to S4. The patient is not worldwide qualified. He did have the onset of these psychiatric symptoms in the line of duty. Military impairment is marked. Social and industrial impairment is definite to considerable. I would recommend that while he continues on active duty that he continue with his regular follow-ups at this clinic. Also, I would suggest he be assigned one primary care provider to work with me in maintaining him on a safe and appropriate medication regimen while he remains in the military. I would recommend this case be referred on through MEB/PEB channels and would have to recommend retirement based on the psychiatric diagnoses.

Id. Also, from the Medical Evaluation Board Summary, is a diagnosis of Irritable Bowel Syndrome. Id.

The record contains a June 5, 2000, Affidavit by Imogene Harris, Petitioner's mother, stating her family has a history of mental health problems, including panic disorder or anxiety attacks, manic depression, and mental illnesses. Ex. 11 at 1204-05. She also attests that Petitioner suffered a serious head injury when he was sixteen years old. Id.

After an examination at VAMC, Lake City, Florida, on October 26, 1995, Petitioner was diagnosed as having anxiety neurosis with depression. Id. at 1207-09. The examining provider was Dr. Umesh Mhatre. Id. at 1207. Petitioner was found to have symptoms of possible manic depression with mood swings. Id. at 1208. However, it was specifically found that Petitioner was competent to handle his own affairs. Id. at 1209. The evaluation was approved on December 11, 1995. Id. at 1209.

The Supreme Court of Florida, when reversing the death sentence, recognized that Petitioner had submitted "uncontroverted evidence that he had a familial pattern of mental illness, that he had suffered a traumatic head injury as a teenager, and that he had symptoms of possible manic depression with mood swings in 1995[.]" Ex. 19 at 23. It further found that he "presented evidence that he was diagnosed with bipolar II disorder and was prescribed Depakote in 1996, and that sixty days before his wife's death, he had a psychiatric consultation." Id. at 23-24. The court concluded the trial court erred in failing to consider this additional mental

health evidence when making its determination with respect to the extreme mental or emotional disturbance mitigator. Id. at 24.

Petitioner, in his Rule 3.850 motion, claimed his defense counsel was ineffective for failing to request a competency evaluation. The trial court attempted to conduct an evidentiary hearing on this issue on July 24, 2006. The evidentiary hearing was suspended when it became apparent that Petitioner was waiting for "Father" to talk to him. Ex. 30 at 4-5. Thereafter, counsel was appointed for Petitioner, Ex. 31, and an evidentiary hearing was conducted on April 2, 2007. Ex. 32. Retained trial counsel, Blair Payne, attested that he referred Petitioner for a competency examination prior to trial. Id. at 5. Dr. Umesh Mhatre completed an evaluation of Petitioner. Id. Payne stated that he was able to communicate with Petitioner regarding his case; he was able to converse with Petitioner about what would occur during the trial and discuss trial strategy; and he never thought Petitioner was incompetent during the course of the trial. Id. at 7-8. Payne attested that he would have referred Petitioner for further evaluation if he felt like there had been a change in Petitioner's mental status. Id. at 8-9.

Payne stated that he "[n]ever had any question whatsoever as to [Petitioner's] competency." Id. at 11. Payne explained that when Petitioner was asked questions, he answered intelligently. Id. Payne said Petitioner understood the ramifications of

testifying and participated in jury selection.  Id. 11-12.  Payne noted that Petitioner suggested questions for witnesses and noticed particular details about the evidence, including a pair of boots that had been laced in a peculiarly neat manner.  Id.  Payne said Petitioner never talked about having a pipeline to God.  Id. at 13.  Finally, Payne attested that Petitioner told him he prayed, but nothing out of the ordinary was mentioned.  Id.

Dr. Umesh Mhatre, M.D., a psychiatrist, attested that he conducted an evaluation of Petitioner on June 30, 2000.  Id. at 19.  He took both a personal and psychiatric history from Petitioner.  Id.  Dr. Mhatre determined that Petitioner was not suffering from a psychiatric illness.  Id. at 20-21.  He found Petitioner competent to proceed to trial.  Id. at 21.  He prepared a written report for defense counsel.  Id. at 21-22.  He noted that Petitioner was under some stress, but it did not affect his ability to defend himself.  Id. at 22-23.  Dr. Mhatre confirmed that during the evaluation, Petitioner never talked about having conversations with God or having his conduct controlled by God.  Id. at 23.  No hallucinations were observed and Petitioner did not report having hallucinations.  Id. at 24.  Dr. Mhatre saw no signs of psychosis.  Id. at 26.  He found Petitioner to be anxious and depressed, but found no unusual behavior based on the charges Petitioner was facing.  Id. at 26-27.

Petitioner attested that Dr. Mhatre evaluated him for the VA and diagnosed him as having Bipolar II disorder. Id. at 31. Petitioner said he had been on medication and was receiving therapy. Id. at 31-32. Petitioner testified that his medication was taken away upon his arrest. Id. at 31. He said he saw combat in Desert Storm, Desert Calm and Desert Shield. Id. at 33. He also attested he suffered a fractured skull when he was young. Id. at 34.

After the evidentiary hearing, the court made the following findings:

> The Court finds from the testimony that we've seen here today that the defendant was evaluated by Dr. Mhatre. **That the defendant was found competent by Dr. Mhatre. That the defense attorney Mr. Payne saw no indication of mental illness and to the contrary was ably assisted by the defendant in the defendant's defense.** And under the prevailing law the reasonableness of the attorney's efforts was above average and the Court denies the claim for relief under Allegation 2 of ineffective assistance of counsel on those grounds.

Id. at 38 (emphasis added).

Trial counsel Payne's Interoffice Memorandum, dated February 4, 2000, notes that Dr. Mhatre saw Petitioner and Petitioner "exhibited no signs or symptoms of any mental defects or deficiencies." Ex. 33 at 1217. Dr. Mhatre confirmed that he reviewed the information that was provided to him by counsel, and he saw nothing which would lead to mitigation. Id. Dr. Mhatre

noted Petitioner previously suffered a head injury, but he found it to be "largely insignificant." Id.

Dr. Mhatre's Psychiatric Evaluation, dated January 30, 2000, is attached. Id. at 1230-34. It states that Petitioner was examined at the Columbia County Jail on January 30, 2000. Id. at 1230. It notes: "Roger claims that ever since the combat, he has had trouble controlling his temper. He came out of the service on the early retirement program, retaining the same benefits as if he had served twenty years. Subsequently, he started working at Wal Mart in the automotive department where he worked for two years prior to being arrested." Id. at 1231-32. Petitioner admitted to drinking too much and suffering a fractured skull and head injuries as a youth. Id. at 1232. Petitioner also stated he had been diagnosed with Irritable Bowel Syndrome. Id. Petitioner denied any inpatient psychiatric care, but admitted to receiving anger management treatment in 1979 and in 1994. Id. at 1232-33. At that time, he was prescribed Desyrel and other medication. Id. at 1233.

Dr. Mhatre recorded that Petitioner exhibited a mild degree of depression and cried repeatedly during the interview. Id. at 1233. "There was no evidence, however, to auditory or visual hallucinations, perceptual deficits or psychosis; neither was there any evidence to pressured speech, flight of ideas or thought blocking." Id. The doctor also noted, "[c]ognitive functions of orientation, memory, abstract thinking are intact and he denies any

suicidal or homicidal thinking." Id. at 1233-34.  Dr. Mhatre noted that he reviewed extensive material provided by counsel, including Petitioner's military records.  Id. at 1234.  The impression was "[n]o psychiatric illness."  Id.  It was recommended that Petitioner was competent to proceed with his case.  Id.

In its order denying ground two of the Rule 3.850 motion, the trial court found that Dr. Mhatre conducted a psychiatric evaluation on January 30, 2000, obtaining a personal history from Petitioner as well as an alcohol and drug history, a legal history, a medical history and a psychiatric history.  Ex. 34 at 1220.  The court found Dr. Mhatre concluded that Petitioner was competent to proceed and exhibited no psychiatric illnesses.  Id. at 1220.  The court noted that Petitioner was able to effectively and competently assist defense counsel during the course of the trial.  Id. Finally, Petitioner did not exhibit any behavior which led either counsel or Dr. Mhatre to believe Petitioner was incompetent, schizophrenic, or claiming to have a direct pipeline to God.  Id.

The record shows Petitioner was diagnosed with Bipolar II disorder when he was seen in Lake City on July 29, 1996; however, the signature does not appear to be that of Dr. Mhatre.  Ex. 36, Exhibit One, Medical Record Progress Notes of July 29, 1996.[4]

After an extensive review of the record, this Court opines that the record refutes Petitioner's assertion of mental

---

[4] The signature appears to be that of T.S. Garner, M.D.

incompetence during the relevant AEDPA one-year time period. The mental health records establish that any impairment was not sufficient to render him mentally incompetent and would not have affected his ability to timely file the Petition in this Court. Indeed, Petitioner has failed to show profound mental incapacity during the relevant time period from October 18, 2003 to October 18, 2004, and the record demonstrates that Petitioner was mentally capable of filing a timely Petition in this Court.

Yes, Petitioner suffered from an anxiety disorder, depression, mood swings, Irritable Bowel Syndrome, headaches and acid reflux. He had a family history of anxiety and depression. He also suffered from a head injury or injuries as a youth. But, it was determined that he was competent to handle his own affairs in 1995. In 1996, he was diagnosed with Bipolar II disorder, but he was examined on January 30, 2000, and found to be competent to proceed to trial. See Fox, 373 Fed.Appx. at 34 (finding Fox failed to demonstrate that he was mentally incompetent to file a federal habeas corpus petition, especially when the record showed that Fox was found competent to stand trial). It was noted Petitioner had anger management issues and mild depression, but upon review of military and other records, the psychiatrist determined that Petitioner had no psychiatric illnesses. Petitioner was not suffering from hallucinations and he had no signs of psychosis,

even after his medication was taken away upon his arrest.[5] The doctor found Petitioner's head injury to be largely insignificant. Petitioner's trial attorney attested that he never questioned Petitioner's competence during the trial, and in fact, Petitioner was quite helpful and made astute observations during the trial.[6]

In sum, Petitioner has not presented sufficient evidence to create a factual issue as to a causal connection between any mental incompetence and his ability to file a timely Petition. Simply claiming one has been mentally impaired for a long period of time does not establish entitlement to equitable tolling. See Whiting v. McNeil, No. 4:08cv301-RH/WCS, 2009 WL 2460753, at *5 (N.D. Fla. Aug. 7, 2009) (claims of suffering mental impairments for life does not entitle a federal petitioner to equitable tolling). Indeed, "mental impairment is not *per se* a reason to toll a statute of

---

[5] Petitioner asserts his "mental incompetence was at issue on July 2006 and still an issue to date." Reply at 4. Upon review, it does appear that Petitioner may have been hearing voices or hallucinating on July 24, 2006, when the trial court attempted to conduct an evidentiary hearing, but this incident occurred long after the relevant time period at issue. Even assuming a period of incapacity in 2006, there is no causal connection between the alleged incapacity and Petitioner's ability to seek timely post-conviction relief in this Court. See Roberts v. Gulf Corr. Inst. Officials, No. 5:05CV234-RH/WCS, 2006 WL 1517241, at *2 (N.D. Fla. May 28, 2006).

[6] After he was convicted, an appeal was taken, and Petitioner prevailed in part, with the death sentence being vacated and the case remanded for a new penalty phase proceeding. There was a stipulation that Petitioner would serve a life sentence. Petitioner did not have to face the death penalty again.

limitations." Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (citation omitted).

This Court finds that Petitioner is not entitled to equitable tolling for those days between October 18, 2003 until October 18, 2004, when the limitations period expired. Any other requested equitable tolling for additional time periods, for example from 2006 and beyond, would not benefit Petitioner.

Petitioner specifically states that he is not making a claim of actual innocence. Instead, he alleges that the evidence was insufficient to support his conviction. Reply at 8. The Court will not reach the merits of this issue since the Petition is untimely filed and Petitioner is not entitled to equitable tolling of the limitations period.

Petitioner has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him. For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).

### C. Certificate of Appealability

### Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this

substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability. Because this Court

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

2. Respondents' May 12, 2011, Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. #21) is **GRANTED**.

3. This case is **DISMISSED** with prejudice.

4. The Clerk of the Court shall enter judgment dismissing this case with prejudice and shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of November, 2011.

ROY B. DALTON JR.
United States District Judge

sa 11/4
c:
Roger Stewart Harris
Ass't Attorney General (Jordan)